Ellis *v.* Blankenship.

4-7419                                    182 S. W. 2d 756

Opinion delivered October 16, 1944.

*G. E. Keck, Virgil Greene* and *H. G. Partlow,* for appellant.

*Holland & Taylor,* for appellee.

Knox, J. This appeal presents solely an issue of fact—whether R. M. Ellis was competent to enter into an option contract, and later make the deed in conformity therewith. This matter concerns the sale by Mr. Ellis to U. S. Blankenship of a farm, which was then and had been occupied by Mr. Ellis as his home for several years. The farm consists of forty acres of land, only 36½ acres of which, however, is tillable. The purchase price was $5,400, being a basis of $135 per acre for the entire forty, and slightly more than $147 per acre for the tillable land.

Shortly after the sale by Mr. Ellis to appellee the probate court of Mississippi county, at the behest of Mr. Ellis' children, appointed a guardian for his person and estate, and this suit was commenced. The main grounds relied on by appellants are (1) that fraud was practiced by appellee upon Mr. Ellis to obtain the conveyance; (2) that the purchase price was inadequate; and (3) that because of his age and mental infirmity Mr. Ellis lacked the mental capacity to understand and transact business.

There is no evidence of fraud. The deal was consummated in the office of an attorney selected by Mr. Ellis' son-in-law, and several of Mr. Ellis' children were present. Appellee testified that he and Ellis had discussed the trade for several weeks before it was made; that his first offer was $5,000, and Ellis increased the price by four hundred dollars. During all this time Mr. Ellis was in touch with his children, actually living with one, and seeing the others frequently. There appears to have been no effort on the part of appellee to conceal the fact that he was trying to purchase this property.

As to inadequacy of purchase price, the record does indicate that a better price, perhaps as much as $1,600, might have been obtained. It is to be remembered, however, that no such offer, or any other above the amount paid, was actually made. The evidence on this point is based on the opinion of witnesses as to value. On the other hand, other witnesses testified that the price paid represented the true value. There is sharp conflict in the testimony on this point, but, it is to be remembered, the only purpose for such evidence is to establish presence or lack of mental capacity, and only a wide divergency between value and sales price could have had strong evidentiary value on the issue.

The evidence is undisputed that Mr. Ellis is 83 years of age; that he is hard of hearing; afflicted with a disease somewhat akin to vertigo, which at times causes him to have dizzy spells; that he suffers with high blood pressure. Several months before the transaction, out of which this litigation arose, he was dragged some distance by a pair of young runaway mules.

The Ellis family and appellee have lived in the community for a number of years, and many lay witnesses testified on behalf of the respective parties relative to Mr. Ellis' mental condition. To give a resume of all the testimony would unduly prolong this opinion, and to review a part and omit the balance would give undue emphasis to that reviewed. As to this lay testimony it may appear that on some points the preponderance is in favor of appellant, while on others it is on the side of appellee. Several of Mr. Ellis' children testified to facts indicating lack of competence, but their interest in the result of this litigation cannot be ignored.

Four physicians, who had examined Mr. Ellis, testified, two that, in their opinion, he was competent, and two that, in their opinion, he was not. Two of these physicians had known Mr. Ellis some twenty years, and had treated him and members of his family. The same ratio of divergency of opinion existed between these family physicians as the others.

Mr. Ellis took the stand and testified as a witness in the case. His evidence indicated that he understood and appreciated the issues. If any criticism of his testimony is at all justified it is that his answers disclose an over-keenness of perception for one supposed to be lacking in mental capacity.

This case furnishes a splendid example of the value of the rule that the findings of a chancery court, while not conclusive, are nevertheless persuasive, and will not be disturbed unless against the weight of the evidence. If we were required to examine this record and decide this case on first impression, wholly without knowledge of local conditions, we would work under a great handicap. The chancellor on the other hand doubtless knew all, or most of the parties and witnesses; he was familiar with the scene in which the controversy was set; he was adjusting a dispute between his neighbors and friends, and the decree of the chancery court, of necessity, reflected much local color, which was clear to the judge

thereof and helpful to a proper determination of the issues, but of which we can know little.

The decree of the lower court is affirmed.