MORRIS *v.* BELAND.

4-8118                                          200 S. W. 2d 309

Opinion delivered March 24, 1947.

*Sherrill, Cockrill & Wills,* for appellant.

*Hill, Fitzhugh & Brizzolara,* for appellee.

HOLT, J. Mary F. Raymond died testate in Fort Smith, Arkansas, and her will was probated there September 25, 1945. She left an estate of the approximate value of $160,000. She made certain bequests in the amount of approximately $15,000, and in addition, under section 2, she devised ''to Cousin Mary Brogan Hart, of Rock Island, Illinois, $75 per month during her natural life to be paid by executors and to be a first charge upon the estate. In the event of the death of Mary Brogan Hart, I devise to my cousin, Catherine Brogan, the aforesaid sum of $75 per month to be paid

to her during her natural life," and in a codicil, was this provision: "I ratify and confirm my last will in every other respect except that the trust in said will shall continue only for 10 years after the death of my two cousins named in this will, or my death, if they both die before I do; then trust estate to vest in the bishop for said purposes." These cousins are approximately 65 years of age.

Louis Beland, Will T. Reynolds and Tom Brogan were named "as executors and trustees" of her estate.

The will further provided: "Eighth: Devise the rest and residue of my property to the executors, as trustees, and expressly in trust for the following purposes: Ninth: To be held in trust by the trustees with authority in the trustees to hold said residue in the form I die leaving it, or to sell under sanction of the court any part of said residue for cash, except the property located at Garrison Avenue and Towson Avenue in Fort Smith, as in the judgment of said trustees with the approval of the court a sale seems best for the interest of the trust estate. The net income of the trust estate to be held by the trustees until such time as the bishop shall decide it is proper to establish said school and then pay to such persons as the bishop shall designate and annually thereafter the income of said trust estate shall be paid to him. Said income shall be used for the establishment or aid in establishing and maintaining at Fort Smith, Arkansas, a white Catholic high school operated with approval and under the direction of the Roman Catholic bishop of Little Rock, to be available to Catholics of all parishes in Fort Smith and vicinity on equal basis as to tuition."

The inventory of the estate showed real property of the approximate value of $130,490, and $30,267.88 of personal property.

July 20, 1946, the executors and trustees filed a petition in which they alleged that Mary F. Raymond, at the time of her death, owned "Lots Four (4), Five (5), Seven (7), Eight (8) and the South Half of Lot Nine (9) in Block Five Hundred Sixty-three (563),

Reserve Addition to the City of Fort Smith, Arkansas;'' ''that this property had been appraised by three real estate men, R. T. Little, M. C. Mansker and R. E. Patterson, to be of the value of $34,000; that under the terms of the will, specifically section 9 thereof, *supra,* that they were of the opinion that it would be for the best interest of the estate to sell said property at private sale'' and prayed: ''The Court for an order authorizing empowering and directing them to sell said property for cash at private sale for the best price obtainable, provided that in no event shall said property be sold for less than $34,000.''

Appellant, John B. Morris, Roman Catholic bishop of Little Rock, filed his response in which he denied that it would be to the best interest of the estate to sell the property and prayed that the petition of the trustees be denied.

Upon a hearing, two of the trustees, Mr. Beland and Mr. Reynolds, gave oral testimony before the court to the effect that they had had the property appraised by three reputable and prominent real estate men in the City of Fort Smith, who appraised the property at $34,000; that real estate values in Fort Smith were abnormally high and that it was their judgment, a sale of the property for $35,000 cash would in the circumstances be for the best interest of the estate.

They further testified that the property is located approximately two and one-half blocks from Garrison Avenue; that Mrs. Raymond had never realized more than $500 net, annually, from the property and that it could be rented for $65 a month to a filling station. If permitted to sell, they would convert the $35,000 received from the sale into Government Bonds drawing $2\frac{1}{2}\%$ interest per annum, which would amount to approximately $875 a year.

Bishop Fletcher, on behalf of respondents, testified also orally that it was the policy of the Catholic Church to hold real estate for a long term and improve the property, and in his judgment, it would be to the best

interest of the estate to retain the property in the form of real estate rather than convert it into cash.

At the conclusion of all the testimony, the court found, among other things: ''The opinion of the trustees has weight with the court. They are three men who live in this community and are acquainted with the property values and trends within the city. She said in her will, 'I am trusting this to you, and when, in your judgment, you think the property should be sold, you should sell it, providing it meets the approval of the court.' If you attempt to sell it without regard to whether it is bringing the best price possible, then the court will stop you. You are getting a very high price for the property. I don't think we will get back to the level we had before the war and property will get back as cheap as in the twenties, but there will be a leveling out and the property of less value over a period of 20 years than it is now—of considerably less value. It is true that much property in Fort Smith is selling at twice or three times its normal value. This is on account of the war and on account of inflation, and that isn't normal. You probably have a chance of getting nearly twice what its value would be in normal times. . . .

''Undoubtedly the testator desired that the trustees do the best possible with her estate to derive as much money as possible for the purposes she had in mind. None of us can say which is best—to sell it now or hold it. It might be worth twice that 40 years from now. I know two of the trustees are Catholics. They are pretty hard-headed businessmen too and I think men of excellent judgment. They think it is a propitious time to sell this property and I am inclined to agree with them. The order will be made for this property to be sold.''

This appeal followed.

Appellant says: ''The only question in this appeal is whether or not it would be more in keeping with the will and better carry out its terms to retain the property at Towson Avenue and Eleventh Street in the form of real estate than to convert it into cash and invest it in government bonds at 2½%.''

That part of the will, *supra,* with which we are primarily concerned, is the following sentence: "To be held in trust by the Trustees with authority in the Trustees to hold said residue in the form I die leaving it, or to sell under sanction of the court any part of said residue for cash, except the property located at Garrison Avenue and Towson Avenue in Fort Smith, as in the judgment of said Trustees with the approval of the court a sale seems best for the interest of the trust estate."

It appears to us that the meaning of this language is so clear and unambiguous that it needs no judicial construction.

It was the intention of the testatrix to confer upon her executors and trustees the power to sell the property in question for cash when in their judgment, with the approval of the court, a sale might seem "best for the interest of the trust estate."

It is only in a case where there is some ambiguity or doubt as to the meaning of the language of the will that any recourse to judicial interpretation or construction is justified. The law, long approved and followed in many decisions of this court, is to the following effect: "Where such intention is expressed in the will in clear and unequivocal language, there is no occasion for judicial construction and interpretation and it should not be resorted to or allowed." *Thompson on Wills,* (2d Ed.) § 210.

In 65 *Corpus Juris,* p. 736, we find this language: "In accordance with the rules relating to powers of sale generally, the scope and extent of the power of a trustee to sell and convey trust property is to be determined from the instrument by which the power is created," and in this same volume at page 741, we find: "A condition that the grantor or the *cestuis que trustent* request or consent to a sale by the trustees is frequently attached to power of sale. In the absence thereof the trustee may exercise the power without consent of the beneficiary."

In the present case, as indicated, the trustees were given the unqualified power to sell the property in question when, in their judgment and with the court's approval, it seemed to the best interest of the estate to make the sale.

We think the findings and decree of the lower court are not against the preponderance of the testimony; in fact, we think the great preponderance of the testimony supports his findings. (*Ellis* v. *Blankenship,* 207 Ark. 739, 182 S. W. 2d 756.)

Accordingly, the decree is affirmed.